UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

GREGORY WHITFIELD,

    Petitioner,

v.                                  CASE NO. 6:10-cv-1638-Orl-36DAB

SECRETARY, DEPARTMENT
OF CORRECTIONS, et al.,

    Respondents.
_____

## ORDER

Petitioner initiated this action for habeas corpus relief pursuant to 28 U.S.C. section 2254 (Doc. No. 1). Upon consideration of the petition, the Court ordered Respondents to show cause why the relief sought in the petition should not be granted. Thereafter, Respondents filed a response to the petition for writ of habeas corpus in compliance with this Court's instructions and with the *Rules Governing Section 2254 Cases for the United States District Courts* (Doc. No. 18). Petitioner did not file a reply and instead moved to file an amended habeas petition (Doc. No. 20). Although given numerous opportunities to file an amended petition (Doc. Nos. 23, 25, 27, 29, & 31), Petitioner did not do so. Petitioner later indicated his wish to proceed only on the claims in his initial habeas petition (Doc. No. 39).

Petitioner alleges two claims for relief in his habeas petition: (1) trial counsel was ineffective for failing to object to expert witness testimony given by a non-qualified lay

witness; and (2) trial counsel failed to properly investigate and present evidence that he was mentally ill and did not intentionally flee from police. For the following reasons, the petition for writ of habeas corpus is denied.

## I.     Procedural History

Petitioner was charged by amended information with aggravated fleeing and eluding (count one), driving a motor vehicle without a license (count two) and giving a false name or identification (count three). After a jury trial on counts one and three, Petitioner was convicted of those counts.[1] Petitioner was adjudicated guilty of all three counts and was sentenced to a twenty-year term of imprisonment for count one, as a habitual felony offender ("HFO"), to time served for count two, and to 365 days in jail on count two. Petitioner appealed, and the Fifth District Court of Appeal affirmed *per curiam*.

Petitioner filed a motion to correct illegal sentence pursuant to Florida Rule of Criminal Procedure 3.800(a), alleging that his HFO sentence was illegal pursuant to *Apprendi v. New Jersey*, 530 U.S. 466 (2000). The trial court denied the motion. On appeal, the Fifth District Court of Appeal affirmed *per curiam*.

Petitioner subsequently filed a Rule 3.850 motion for post-conviction relief alleging seven claims. After holding an evidentiary hearing, the trial court denied Petitioner's motion. The appellate court affirmed the trial court's denial *per curiam*. Finally, Petitioner filed a petition for writ of habeas corpus with the Fifth District Court

of Appeal in which he alleged ineffective assistance of appellate counsel. The appellate court denied the petition without discussion. The instant federal petition for writ of habeas corpus follows.

## II. Legal Standards

### A. Standard of Review Under the Antiterrorism Effective Death Penalty Act ("AEDPA")

Pursuant to the AEDPA, federal habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The phrase "clearly established Federal law," encompasses only the holdings of the United States Supreme Court "as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000).

"[S]ection 2254(d)(1) provides two separate bases for reviewing state court decisions; the 'contrary to' and 'unreasonable application' clauses articulate independent considerations a federal court must consider." *Maharaj v. Sec'y for Dep't of Corr.*, 432 F.3d 1292, 1308 (11th Cir. 2005). The meaning of the clauses was discussed by the Eleventh Circuit Court of Appeals in *Parker v. Head*, 244 F.3d 831, 835 (11th Cir.

---

[1]Petitioner entered a guilty plea to count two.

2001):

> Under the "contrary to" clause, a federal court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the United States Supreme Court] on a question of law or if the state court decides a case differently than [the United States Supreme Court] has on a set of materially indistinguishable facts. Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the United States Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case.

Even if the federal court concludes that the state court applied federal law incorrectly, habeas relief is appropriate only if that application was "objectively unreasonable."[2] *Id*.

Finally, under § 2254(d)(2), a federal court may grant a writ of habeas corpus if the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." A determination of a factual issue made by a state court, however, shall be presumed correct, and the habeas petitioner shall have the burden of rebutting the presumption of correctness by clear and convincing evidence. *See Parker*, 244 F.3d at 835-36; 28 U.S.C. § 2254(e)(1).

### B. *Standard for Ineffective Assistance of Counsel*

---

[2]In considering the "unreasonable application" inquiry, the Court must determine "whether the state court's application of clearly established federal law was objectively unreasonable." *Williams*, 529 U.S. at 409. Whether a state court's decision was an unreasonable application of law must be assessed in light of the record before the state court. *Holland v. Jackson*, 542 U.S. 649, 652 (2004) (*per curiam*); *cf. Bell v. Cone*, 535 U.S. 685, 697 n. 4 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law).

The United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984), established a two-part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance: (1) whether counsel's performance was deficient and "fell below an objective standard of reasonableness"; and (2) whether the deficient performance prejudiced the defense. *Id*. at 687-88. A court must adhere to a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id*. at 689-90. "Thus, a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id*. at 690; *Gates v. Zant*, 863 F.2d 1492, 1497 (11th Cir. 1989).

As observed by the Eleventh Circuit Court of Appeals, the test for ineffective assistance of counsel:

> has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial. Courts also should at the start presume effectiveness and should always avoid second guessing with the benefit of hindsight. *Strickland* encourages reviewing courts to allow lawyers broad discretion to represent their clients by pursuing their own strategy. We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220-21 (11th Cir. 1992) (citation omitted). Under those rules and presumptions, "the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994).

III.   *Analysis*

   A.   *Claim One*

Petitioner alleges trial counsel was ineffective for failing to object to expert witness testimony given by a non-qualified lay witness (Doc. No. 1 at 5). In support of this claim, Petitioner maintains that Officer John Grinwis testified that Petitioner was traveling 50 to 60 miles per hour. *Id.* However, Petitioner contends that Officer Grinwis was not qualified to estimate at what speed Petitioner was traveling. *Id.* Petitioner alleges that had counsel objected to the improper testimony, the jury would not have had the necessary evidence of excessive speed and could not have convicted him of aggravated fleeing and eluding. *Id.* at 6.

Petitioner raised this claim in his Rule 3.850 motion for post-conviction relief (App. L). The trial court denied the instant claim, finding Petitioner had failed to demonstrate prejudice pursuant to *Strickland* (App. M at 7). The trial court noted that even if Officer Grinwis' testimony was improper, the jury saw a video of the incident and therefore could judge the speed Petitioner traveled. *Id.* The Fifth District Court of Appeal affirmed *per curiam* (App. P).

Petitioner has not demonstrated that he is entitled to relief on this claim. Officer Grinwis testified that on March 29, 2004, at approximately 4:00 a.m., he observed Petitioner driving a white Mitsubishi vehicle in a manner such that he believed Petitioner was under the influence of alcohol or drugs (App. C at 20-21). After Officer Grinwis activated the blue emergency lights on his marked police vehicle, the white

Mitsubishi sped up to approximately 50 to 60 miles per hour when the posted speed limit was 35 miles per hour. *Id.* at 33. Officer Grinwis testified that he knew the car was driving this fast because he had to accelerate his own vehicle to that speed to catch up to Petitioner's vehicle and keep up with him. *Id.* Officer Grinwis testified to his own observations, and therefore, his testimony was not improper. *See* § 90.604, Fla. Stat. (2004) (noting that witnesses are allowed to testify regarding events they have personal knowledge of or they perceived).

Petitioner alleges that Officer Grinwis' testimony was inadmissible under section 90.701(2), Florida Statutes (stating a lay witness may testify to his opinion so long as that opinion does not require special knowledge, skill, experience, or training) because the officer did not have special knowledge or skills to estimate vehicle speed (Doc. No. 1 at 19). Contrary to Petitioner's assertions, Officer Grinwis' estimation of the vehicle speed did not require special skill, knowledge, or training. Officer Grinwis explained, as noted above, that he believed Petitioner was driving at a rate of 50 to 60 miles per hour because he had to accelerate his patrol car to that speed to maintain contact with Petitioner's vehicle. Therefore, Petitioner has not shown that counsel's failure to object amounted to deficient performance.

Even assuming that the testimony was inadmissible, Petitioner cannot show that counsel's failure to object resulted in prejudice. As the state court noted, Officer Grinwis recorded the incident on his in-car video system. *Id.* at 21. The video recording was shown to the jury. *Id.* at 28-29. Thus, the jury was able to judge how

fast Petitioner was driving and whether the speed of the vehicle was such that it constituted the high speed necessary to prove aggravated fleeing and eluding. *See* § 316.1935 (3), Fla. Stat. (2004). Petitioner has not demonstrated that the state court's determination regarding this claim was contrary to, or involved an unreasonable application of, clearly established federal law. Accordingly, claim one is denied pursuant to § 2254(d).

### B. *Claim Two*

In his second claim, Petitioner alleges trial counsel failed to properly investigate and present evidence that he was mentally ill and did not intentionally flee from police (Doc. No. 1 at 6). Petitioner notes that he was evaluated by a mental health professional prior to trial and contends that Dr. Bernstein found that he was suffering from paranoid delusions or psychosis at the time the crime was committed. *Id.* at 6-7. It appears that Petitioner is arguing that trial counsel should have presented an insanity defense. Petitioner raised this claim in his Rule 3.850 motion (App. L).

The trial court held an evidentiary hearing on the claim, at which time former defense counsel Andrew Reid testified that he had Petitioner evaluated for competency prior to trial (App. M at 37). Reid also testified that Petitioner wanted to pursue a mental health defense at trial. *Id.* at 40. Reid stated, however, that the doctors who evaluated Petitioner found that he was competent to proceed to trial and was sane at the time of the offense. *Id.* The trial court denied this claim, finding defense counsel did investigate Petitioner's mental health and determined that no

8

defense could be raised because the medical experts did not think Petitioner was insane at the time the offense was committed (App. N at 10-11). The Fifth District Court of Appeal affirmed *per curiam* (App. P).

Petitioner is not entitled to relief on this claim. Defense counsel Reid had Petitioner evaluated by several mental health professionals prior to trial (App. E; Ex. 1). Dr. Bernstein found that Petitioner was "mildly delusional" and any psychosis was mild in severity. *Id*. Dr. Bernstein found Petitioner was competent to proceed because Petitioner understood the charges against him and the proceedings. *Id.* Dr. Bernstein opined that with psychotropic medication, Petitioner could assist counsel. *Id.* Dr. Bernstein also noted that "paranoid psychosis disrupted thinking" likely was present at the time the offenses were committed. *Id.* at 3. Dr. Bernstein did not conclude that Petitioner was insane at the time the offense was committed. *Id.*

Petitioner was also evaluated by Dr. Podnos, who diagnosed Petitioner with possible paranoid schizophrenia and mixed anxiety and depression. *Id.* at Ex. 3. However, Dr. Podnos concluded that Petitioner was sane at the time of the arrest. *Id.* Dr. Friedenberg evaluated Petitioner as well and concluded that Petitioner was competent to stand trial but may not have been sane at the time the offense was committed. *Id.* at Ex. 3. Dr. Riebsame found that Petitioner suffered from a psychotic disorder not otherwise specified that was characterized by paranoia. *Id.* at Ex. 4. However, Dr. Riebsame concluded that even though Petitioner experienced psychological problems at the time the offense was committed, he knew what he was

9

doing and understood the consequences of his actions. *Id.* Thus, only one of the four mental health experts who examined Petitioner opined that Petitioner might have an insanity defense.

Petitioner has not shown that trial counsel's actions amounted to deficient performance as counsel did investigate Petitioner's mental health. Additionally, even assuming counsel acted deficiently by failing to present an insanity defense, Petitioner cannot demonstrate that this defense likely would have succeeded at trial. Section 775.027(1), Florida Statutes, provides that "[i]t is an affirmative defense to a criminal prosecution that, at the time of the commission of the acts constituting the offense, the defendant was insane." The statute further states that to establish an insanity defense, a criminal defendant must prove that (1) he has a mental infirmity, disease, or defense and (2) because of this condition, the defendant did not know what he was doing or its consequences or did not understand that what he did was wrong. *Id.*[3] A criminal defendant has the burden of proving insanity by clear and convincing evidence. *Id.*

Although four mental health professionals found that Petitioner suffered from a mental infirmity, disease, or defect, three of the four doctors also found that Petitioner did understand what he was doing on March 29, 2004, and did understand the consequences of his actions. Although one mental health professional opined that Petitioner may not have been sane at the time the offense was committed, Petitioner has

---

[3]This statute codifies the "*M'Naghten* Rule," which has long been the rule for proving insanity in Florida. *See Patton v. State*, 878 So. 2d 368, 374-75 (Fla. 2004).

not established that his condition was such that he did not know what he was doing or did not understand that his actions violated the law.

Furthermore, to the extent Petitioner suggests that his voluntary ingestion of drugs and alcohol rendered him unable to understand the nature of his actions, Petitioner's claim fails. Florida law abolished the defense of voluntary intoxication effective October 1, 1999, prior to the date of the offense in the instant case. *See* § 775.051, Fla. Stat. (1999). Thus, Petitioner has not shown that trial counsel acted deficiently with respect to this claim, nor has he demonstrated that any deficiency on the part of counsel resulted in prejudice. Petitioner has not met his burden of establishing that the state court's determination was contrary to, or an objectively unreasonable application of, federal law. Accordingly, Petitioner's claim is denied pursuant to § 2254(d).

Any of Petitioner's allegations not specifically addressed herein have been found to be without merit.

## IV. *Certificate of Appealability*

A prisoner seeking to appeal a district court's final order denying his petition for writ of habeas corpus has no absolute entitlement to appeal but must obtain a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1); *Harbison v. Bell*, 556 U.S. 180 (2009). "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing, petitioner "must demonstrate that reasonable jurists would find the district

court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) or, that "the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003). Petitioner has not made the requisite showing in these circumstances. The Court will deny Petitioner a certificate of appealability.

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. The Petition for Writ of Habeas Corpus filed by Gregory Whitfield (Doc. No. 1) is **DENIED**, and this case is **DISMISSED WITH PREJUDICE**. The Clerk of the Court shall enter judgment accordingly.

2. Petitioner is **DENIED** a Certificate of Appealability.

3. The Clerk of the Court is directed to close this case.

**DONE AND ORDERED** in Orlando, Florida, this 27th day of November, 2013.

Charlene Edwards Honeywell
United States District Judge

Copies to:
OrlP-3 11/27
Counsel of Record
Gregory Whitfield